**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIKTORYIA RAMANCHYK, | Case No. 5:26-cv-03021-ACCV |
| Petitioner, | |
| v. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| TODD LYONS, *et al.*, | |
| Respondents. | |

## I.    RULING

On June 2, 2026, Petitioner Viktoryia Ramanchyk ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241 ("§ 2241"), challenging her detention as a violation of the Due Process Clause of the Fifth Amendment.  (Dkt. 1 at 10–18.)  For the reasons stated herein, the Court DENIES the Petition.

## II.    FACTS AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Belarus who entered the United States on January 2, 2021, as a B-2 nonimmigrant visitor.  (Dkt. 1 at 5–6.)  Petitioner was permitted to remain in the United States until July 1, 2021.  (*Id.* at 6.)  On or around May 26, 2021, Petitioner filed an application for asylum, which remains pending.  (*Id.*

at 6–7.)

According to Petitioner, she was detained by Immigration and Customs Enforcement ("ICE") on October 8, 2025, and has remained detained at the Adelanto ICE Processing Center. (*Id.* at 7.) The same day, the Department of Homeland Security issued Petitioner a Notice to Appear charging Petitioner under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA") for an alleged nonimmigrant overstay. (*Id.* at 7, 38.) Petitioner was not charged as removable based on a criminal conviction. (*Id.* at 7.) Petitioner's removal proceedings remain pending, and she is not subject to a final order of removal. (*Id.*)

Petitioner is under psychiatric care for generalized anxiety disorder and major depressive disorder, recurrent episode, moderate, for which she receives psychotherapy and prescription medication treatment. (*Id.* at 8.) Petitioner alleges her continued detention is causing hardship, worsening her mental health condition, disrupting her medical care, and increasing the risk of further psychiatric deterioration. (*Id.* at 7–8.) According to Petitioner, her long-time boyfriend will support her if she is released and will assist with housing, transportation, medication, treatment compliance, and court and immigration obligations. (*Id.* at 10.)

Respondents assert that Petitioner omitted her criminal history from the Petition. (Dkt. 8 at 1.) The Form I-123 includes: (1) a September 7, 2025 arrest for battery on a spouse in violation of California Penal Code § 243(e)(1); (2) a June 20, 2025 arrest for embezzlement by public officer in violation of California Penal Code § 424(a)(1); and (3) a July 3, 2025 arrest by the Great Falls, Montana Police Department for three counts of disorderly conduct (1)(a)–(1)(h), a misdemeanor offense. (Dkt. 8-1 at 3.) Respondents' Answer also raises a June 8, 2025 arrest for felony ill use of teargas/teargas weapon in violation of California Penal Code § 22810(b)(1).[1] (Dkt. 8 at

---

[1] Respondents cite to Exhibit 1, Form I-213 for the allegations that Petitioner has

2

1.) Petitioner alleges her arrests occurred during a severe mental-health crisis and psychotic episode, and she was unable to control her actions during that time. (Dkt. 1 at 9.) Petitioner also alleges she has remained released on her own recognizance in the underlying criminal proceedings, which are for misdemeanor allegations, and has complied with court appearances and conditions of release. (Dkt. 9 at 8.) According to Petitioner, conversations regarding mental health diversion have occurred in her criminal proceedings and that her criminal counsel represented that she is not presently considered a danger to the community. (*Id.* at 9.)

On February 18, 2026, Petitioner was provided with an In Custody Redetermination Proceeding. (Dkt. 1 at 35.) Bond was denied on the basis of "Danger to the community." (*Id.*) Petitioner was provided with another In Custody Redetermination Proceeding on April 15, 2026, referred to by Respondents as a *Rodriguez* bond hearing.[2] (Dkt. 8-2.) The IJ denied bond on the basis of "Danger to the Community." (*Id.*)

In her June 2, 2026 Petition, Petitioner brings one cause of action: that her continued detention violates her Fifth Amendment due process rights. (Dkt. 1 at 10–11.) Among the relief requested, Petitioner requests that the Court issue a writ of habeas corpus requiring her immediate release and enjoining Respondents from re-detaining her without constitutionally adequate notice and process. (*Id.* at 23.)

---

a "June 8, 2025 arrest for felony ill use of teargas/teargas weapon California Penal Code § 22810(b)(1)(PC), a felony." The Court, however, does not see reference to such an arrest in the Form I-213.

[2] Named after the Ninth Circuit's decision in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), which has an extensive history that need not be recounted here, a *Rodriguez* bond hearing is a periodic custody redetermination proceeding—required in the Central District of California—where the government must show at six-month intervals that a detainee's continued detention pending removal proceedings is justified by clear and convincing evidence of flight risk or danger to the community.

On June 3, 2026, Petitioner voluntarily consented to the assigned magistrate judge's jurisdiction under 28 U.S.C. § 636(c). (Dkt. 3.) The action was fully consented to proceed before the magistrate judge on June 9, 2026. (Dkt. 6.)

Respondents filed their Answer to the Petition on June 10, 2026. (Dkt. 8.) They assert that the Court should not review the immigration judge's ("IJ") bond decision because Petitioner did not exhaust her administrative remedies. (*Id.* at 2–3.) Respondents also argue that Petitioner's claim of inadequate medical care is outside of the scope of habeas review. (*Id.* at 3–4.) As to Petitioner's due process claim, Respondents argue that Petitioner has not shown that the process she received, including a *Rodriguez* bond hearing, was defective. (*Id.* at 4.) Respondents argue that because Petitioner has no final order of removal and is in ongoing removal proceedings, the 90-day period has not yet run for the Government to remove her. (*Id.*) As such, Respondents assert that Petitioner's detention is lawful and not per se punitive. (*Id.*)

Petitioner filed her Reply on June 11, 2026, arguing that Respondents mischaracterize her claims and that she is not seeking review of the IJ's bond determination; that the expiration of the Board of Immigration Appeal's deadline does not deprive the Court of habeas jurisdiction; that her continued detention violates Due Process; that the factors in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) favor relief; that she is not dangerous; and that release is the appropriate remedy. (*Id.* at 3–10.) In the Reply, Petitioner restates her request that this Court grant the Petition and order her immediate release. (*Id.* at 11.)

On June 24, 2026, the Court scheduled a status conference for July 1, 2026. (Dkt. 10.) On June 30, 2026, Petitioner filed a supplemental brief in response to the Court's June 24, 2026 order, presenting additional legal authority requested by the Court. (Dkt. 11.) Following the status conference, Petitioner filed a supplemental brief on July 6, 2026. (Dkt. 13.) Petitioner argues that she possesses a protected liberty interest despite never being released on an order of supervision. (Dkt. 13 at 3–5.)

4

Petitioner alleges that courts have recognized that noncitizens who were never previously released on immigration supervision nevertheless possess a protected liberty interest under the Fifth Amendment. (*Id.* 5–8.) Petitioner also alleges that the basis for her detention is 8 U.S.C. § 1226(a) and that she is not mandatorily detained. (*Id.* at 9–11.)

### III.   LEGAL STANDARD

Federal district courts possess the authority to grant petitions for writ of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief."  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also* *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

### IV.   DISCUSSION

In this habeas action, Petitioner claims that her detention is unlawful because it violates the Fifth Amendment's due process protections. (Dkt. 1 at 10–18.)  For the reasons below, the Court disagrees.

**A.   Habeas Jurisdiction**

As a threshold matter, the Court has jurisdiction over this action because Petitioner is not challenging her removal proceedings; she is challenging her prolonged detention by Respondents. (*See generally* Dkts. 1; 9.)

Authority delegated to the Attorney General, such as those related to immigration proceedings, is still subject to the requirements of due process.  The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law[.]"  U.S. Const. amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other

forms of physical restraint—lies at the heart of the liberty that Clause protects."

*Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

**B.      Petitioner's Due Process Claim**

Petitioner argues her ongoing detention violates her procedural due process rights under the Fifth Amendment.  (Dkt. 1 at 10–18.)  Respondents assert that Petitioner fails to identify any due process violation justifying habeas relief and that Petitioner was given a *Rodriguez* bond hearing.  (Dkt. 7 at 4.)

A writ of habeas corpus may be granted to any petitioner who demonstrates "[sh]e is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973).  "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004).  A petitioner bears the burden of proving by the preponderance of the evidence that she is entitled to habeas relief.  *Davis*, 384 F.3d at 638.  Though the liberty interests of U.S. citizens compared to noncitizens "are not coextensive," the Fifth Amendment nonetheless "entitles [noncitizens] to due process of law in deportation proceedings."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205–06 (9th Cir. 2022) (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989); *Morrissey v.*

*Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

Petitioner has not carried her burden to demonstrate that she is entitled to habeas relief.  Petitioner argues that she has a general liberty interest in being free from detention because "'[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty' protected by the Due Process Clause." (Dkt. 1 at 11 (quoting *Zadvydas*, 533 U.S. at 690); *see also* Dkt. 13 at 4–5.)  The Supreme Court, however, made clear in *Demore*, the due process holding in *Zadvydas* attaches in a distinct context—where the noncitizen is the subject of a final order of removal and a 90-day statutory "removal period" operates—which is not applicable here.  *Demore v. Kim*, 538 U.S. 510, 527, 123 S. Ct. 1708, 1719, 155 L. Ed. 2d 724 (2003).

Petitioner also cites to several cases in support of her contention that she possesses a protectable liberty interest.  (Dkt. 1 at 12 (citing *Ghulyan v. Semaia*, No. 5:26-CV-01229-CAS-AGR, 2026 WL 788213, at *1 (C.D. Cal. Mar. 20, 2026) (petitioner had ICE reporting requirements and was detained at an ICE check-in); *Grigoryan v. Mullin*, No. 5:26-CV-01382-MCS-AS, 2026 WL 928627, at *1 (C.D. Cal. Apr. 2, 2026) (Petitioner had reporting and check-in requirements imposed by ICE); *Vladimir Hambardzumyan v. Todd Lyons, et al.*, No. 5:26-cv-02509-DTB, at 2 (C.D. Cal. May 27, 2026) (petitioner was detained and released on a temporary ankle monitor); *Asatryan v. Lyons*, No. 5:26-CV-01895-MBK, 2026 WL 1196005, at *1 (C.D. Cal. Apr. 24, 2026) (petitioner was detained and then released by immigration officials with conditions of release)); Dkt. 11 at 3–8 (citing *Lara v. Hernandez*, No. C26-0747 TSZ, 2026 WL 1758643, at *1 (W.D. Wash. June 18, 2026) (petitioner was lawfully in the United States as she was granted asylum by the Board of Immigration Appeals); *Edgar Khachaturyan v. Semaia, et al.*, No. ED CV 26-1892-ODW(E) (C.D. Cal. June 2, 2026) (petitioner was released on conditional parole); *Robert*

*Soghomonyyan v. Fereti Semaia, et al.*, No. 5:26-cv-02174-KES (C.D. Cal. Mar. 11, 2026) (petitioner was granted parole and released from custody by immigration officials); *Gor Ayvazyan v. Fereti Semaia, et al.*, No. 5:26-cv-02419-MAR, at 2 (C.D. Cal. June 25, 2026) (petitioner was released on an ankle monitor for approximately one week and then was transitioned to telephonic reporting through a mobile application)).)

The cases Petitioner cites in her Petition and in her June 30, 2026 brief are distinguishable because they involve petitioners who had been in immigration custody and then were released or were otherwise lawfully in the United States. *See Melkumyan v. Semaia*, No. 5:26-CV-03019-MBK, 2026 WL 1772761, at *2 (C.D. Cal. June 16, 2026) (distinguishing petitioner's cited cases where the cases involved petitioners who "had been previously released by immigration authorities based on a determination that their detention was not necessary, only to be later re-detained").

The case, *Shevchuk v. Scott*, that Petitioner cites is equally inapposite because Petitioner was admitted as a refugee, No. 2:26-CV-01408-SAB, 2026 WL 1413609, at *1 (W.D. Wash. May 20, 2026), and the cited order involves the Court's review of an IJ's bond decision for abuse of discretion where the petitioner was detained under a different provision of the INA. *Shevchuk v. Scott*, No. 2:26-CV-01872-SAB, 2026 WL 1802094, at *2 (W.D. Wash. June 23, 2026). Here, unlike in those cases, Petitioner has not alleged that she was previously released from custody or that immigration authorities previously made a determination that her detention was not warranted.

And while courts in this Circuit have at times found a liberty interest for those who have never been in immigration custody in the first place due to years of deliberate acquiescence by Respondents, Petitioner does not make such argument. Even if Petitioner did make such argument, those cases are factually distinguishable from the circumstances here. *See e.g.*, *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (petitioner had resided in the United States for 13 years where she worked as a nanny and had no criminal history).

8

The out-of-Circuit cases in Petitioner's supplemental brief filed on July 6, 2026, are similarly distinguishable.  Petitioner cites to *Darko v. Sessions*, 342 F. Supp. 3d 429 (S.D.N.Y. 2018), and *Raspoutny v. Decker*, 708 F. Supp. 3d 371 (S.D.N.Y. 2023).  In both *Darko* and *Raspoutny*, the court's due process analysis addressed whether the petitioner was entitled to a new bond hearing where the government bore the burden of proving by clear and convincing evidence that pretrial detention of the noncitizen was justified.  *See Darko*, 342 F. Supp. 3d at 435; *Raspoutny*, 708 F. Supp. 3d at 383.  Here, Petitioner requests release, specifically stating that she does not seek a new bond hearing (Dkt. 1 at 3, 21,) and Petitioner has already had a *Rodriguez* bond hearing where the Government bore the burden.  (*See* Dkts. 1 at 36; 8 at 1; 8-2 at 1.)

Petitioner also argues that her detention has become constitutionally excessive. (Dkt. 1 at 17–18.)  While Petitioner acknowledges that she is not detained pursuant to a final order of removal, she insists that *Zadvydas* "remains instructive." (*Id.*)  Other than *Zadvydas*, Petitioner, however, points to no on point authority to support her claim that "[u]nder the totality of these circumstances, continued detention is excessive and unconstitutional." (*Id.*)  Though the Court is sympathetic to Petitioner's allegations that her ongoing detention is harmful to her mental health condition, Petitioner provides no citation to legal authority that such allegations are a basis for habeas relief.

Accordingly, the Court denies the Petition for failure to state a meritorious due process claim at this time.

## V.   CONCLUSION

For the reasons stated, the Court DENIES the Petition.

DATED: July 14, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge